Todd FOX, Edward R. Detweiler, Stephanie Vaiano, James B. Cullen, Christine Marie Odell, Steven Gawley, Daniel Altman, Philip Jay Botwinik, Jeffrey S. Zellan, Jaclyn Bernstein, Glen Magpantay, William Weitz, Corey Anthony, Diego Munoz, Edward Fagan, Baycan Fideli, Jodie Green and Jeffrey Luks, Plaintiffs–Appellants,

v.

The BOARD OF TRUSTEES OF THE STATE UNIVERSITY OF NEW YORK and Clifton R. Wharton, Jr., individually and as Chancellor of the Board of Trustees and the State University of New York College at Cortland, and James M. Clark, individually and as President of the College at Cortland, and the State University of New York at Binghamton, and Clifford D. Clark, individually and as President of the State University of New York at Binghamton, and the State University of New York at Albany, and Vincent O'Leary, individually and as President of the State University of New York at Albany, and the State University of New York College of Arts and Sciences at Potsdam, and Humphrey Tomkin, individually and as President of the College of Arts and Sciences at Potsdam, Defendants–Appellees.

No. 780, Docket 93–7715.

United States Court of Appeals, Second Circuit.

Argued Dec. 16, 1993.

Decided Dec. 9, 1994.

Henry T. Reath, Philadelphia, PA (Wayne A. Mack, Richard W. Riley, Marc H. Perry, Duane, Morris & Heckscher, of counsel), for plaintiffs-appellants.

Daniel Smirlock, Asst. Atty. Gen. of the State of New York, Albany, NY (Robert Abrams, Atty. Gen. of the State of New York, Peter H. Schiff, Deputy Sol. Gen. of the State of New York, Nancy A. Spiegel, Asst. Atty. Gen. of the State of New York, of counsel), for defendants-appellees.

Before: MAHONEY and WALKER, Circuit Judges, and EGINTON, District Judge.*

MAHONEY, Circuit Judge:

Plaintiffs-appellants ("Plaintiffs"), individuals who at or following the commencement of this action were students in the State University of New York ("SUNY") system, appeal from a judgment entered May 11, 1993 in the United States District Court for the Northern District of New York, Neal P. McCurn, Judge, that dismissed as moot their amended complaint (the "Complaint") seeking declaratory and injunctive relief on First Amendment grounds against a SUNY regulation that operated to bar private commercial businesses from engaging in sales demonstrations in students' dormitory rooms, and denied leave to file an amended complaint. *See Fox v. Board of Trustees of the State Univ.*, 148 F.R.D. 474 (N.D.N.Y.1993) (*"Fox VI"*) (opinion supporting judgment).

In a prior memorandum-decision and order entered May 24, 1991, the district court had concluded that Plaintiffs' claims were moot because all of the Plaintiffs were no longer SUNY students and thus could not benefit from the declaratory and injunctive relief

sought in the Complaint, rejecting various contentions by Plaintiffs to the contrary that are reiterated on this appeal and addressed subsequently in this opinion. *See Fox v. Board of Trustees of the State Univ.*, 764 F.Supp. 747, 751–57 (N.D.N.Y.1991) (*"Fox V"*). The court had also ruled, however, that Plaintiffs could further amend the Complaint by adding additional plaintiffs who could benefit from declaratory or injunctive relief, and thus stave off dismissal. *See id.* at 757–59. On June 10, 1991, defendants-appellees ("Defendants") moved for modification of this order, seeking dismissal of the Complaint due to mootness without leave to amend to cure the defect. *See Fox VI*, 148 F.R.D. at 476. The court reaffirmed its finding that the claim was moot, but granted Defendants' motion to modify the court's prior order, denied leave to amend the Complaint, and dismissed the Complaint. *See Fox VI*, 148 F.R.D. at 489.

On this appeal, Plaintiffs argue that the district court erred in: (1) dismissing the Complaint as moot; (2) failing to allow amendment of the Complaint; and (3) failing to enter judgment in Plaintiffs' favor. We conclude that because the relief sought in the Complaint could provide no benefit to Plaintiffs once they were no longer students in the SUNY system, and because this case does not fall within any exception to the doctrine of mootness, the district court properly dismissed the case as moot. Further, we conclude that the absence of any remaining Plaintiffs with a legally cognizable personal interest in the outcome of the litigation precludes any amendment of the Complaint to add additional plaintiffs.

We accordingly affirm the judgment of the district court.

Background

The facts of this case have been extensively detailed several times during the course of this protracted litigation, and will be recounted here only as necessary to elucidate the issues presented on this appeal. This case arose when Todd Fox, a student at SUNY

---

* The Hon. Warren W. Eginton, United States District Judge for the District of Connecticut, sitting by designation.

Cortland, was denied permission to host, in his dormitory room on the SUNY Cortland campus, a cookware demonstration sponsored by American Future Systems, Inc. ("AFS"), "a corporation engaged in selling cookware ... to college students through group demonstrations." *Fox V,* 764 F.Supp. at 749 n. 1. Fox was denied permission to host such an event pursuant to SUNY Resolution No. 66–156 (the "Resolution"), which provides in pertinent part that:

> No authorization will be given to private commercial enterprises to operate on State University campuses or in facilities furnished by the University other than to provide for food, legal beverages, campus bookstore, vending, linen supply, laundry, dry cleaning, banking, barber and beautician services and cultural events.

*Fox V,* 764 F.Supp. at 749.

Following the denial of permission for Fox to host the demonstration, AFS, an AFS representative, and Fox commenced this action, claiming that the Resolution violated their First Amendment rights and seeking a preliminary injunction permitting Fox to host an AFS-sponsored cookware demonstration in his dormitory rooms. *See id.; see also Fox v. Board of Trustees of the State Univ.,* 841 F.2d 1207, 1208 (2d Cir.1988) ("*Fox II*"), *rev'd and remanded,* 492 U.S. 469, 109 S.Ct. 3028, 106 L.Ed.2d 388 (1989). The district court initially concluded that the Resolution would not satisfy the requirements set forth by the Supreme Court for the regulation of commercial speech in *Central Hudson Gas & Electric Corp. v. Public Service Comm'n,* 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980), because the Resolution did not "directly advance the governmental interests asserted," and was "more extensive than necessary to serve such interests." *American Future Sys. v. State Univ.,* 565 F.Supp. 754, 767 (N.D.N.Y.1983) ("*AFS v. SUNY*"); *see also Fox V,* 764 F.Supp. at 749–50. Accordingly, the court issued the preliminary injunction sought by the plaintiffs in that case. *See AFS v. SUNY,* 565 F.Supp. at 770–71; *see also Fox V,* 764 F.Supp. at 750.

Following the issuance of the preliminary injunction, the complaint was amended to challenge "interim" regulations promulgated by SUNY after the court issued the injunction, to drop the AFS representative as a plaintiff, to add as plaintiffs several students at other SUNY campuses, and to add as defendants SUNY officials at those campuses. *See Fox V,* 764 F.Supp. at 750; *Fox II,* 841 F.2d at 1210 n. 1. The court extended the preliminary injunction to these additional defendants. *See Fox II,* 841 F.2d at 1210 n. 1. The amended complaint was tried to the district court, which dismissed the complaint and granted judgment for Defendants, holding that SUNY "ha[d] not created a public forum for the commercial speech at issue," and that the Resolution was "viewpoint-neutral and reasonable in relation to the forum's purpose." *Fox v. Board of Trustees of the State Univ. of New York,* 649 F.Supp. 1393, 1401 (N.D.N.Y.1986) ("*Fox I*"), *rev'd and remanded,* 841 F.2d 1207 (2d Cir.1988), *rev'd and remanded,* 492 U.S. 469 (1989); *see also Fox V,* 764 F.Supp. at 750.[1]

The plaintiffs appealed to this court. During the pendency of that appeal, AFS withdrew as a party and proceeded only as an amicus. *See Fox II,* 841 F.2d at 1208; *see also Fox V,* 764 F.Supp. at 750. This court reversed the district court's judgment and remanded for the district court to determine whether the Resolution directly advanced the asserted governmental interests and whether the Resolution was the least restrictive means available to advance those interests. *Fox II,* 841 F.2d at 1213–14.

Upon remand, and while a petition for certiorari filed by Plaintiffs was pending, the district court ruled that, assuming that the Resolution and the interim regulations directly advanced SUNY's asserted interests, neither the Resolution nor the interim regulations were "the least restrictive means for advancing those interests." *Fox v. Board of Trustees of the State Univ.,* 695 F.Supp. 1409, 1413–14 (N.D.N.Y.1988) ("*Fox III*"). Accordingly, the court held that both the Resolution and the interim regulations violated the First Amendment. *Id.* at 1414. How-

---

1. The court declined to consider separately the challenge to the interim regulations. *See Fox I,* 649 F.Supp. at 1402; *see also Fox V,* 764 F.Supp. at 750 n. 10.

ever, on the same day that the district court's decision was issued, October 3, 1988, the Supreme Court granted the petition for certiorari. *Board of Trustees of the State Univ. v. Fox,* 488 U.S. 815, 109 S.Ct. 52, 102 L.Ed.2d 31 (1988). Accordingly, the proceedings in the district court were stayed pending the Supreme Court's decision in the case. *See Fox V,* 764 F.Supp. at 750 & n. 17.

The Supreme Court concluded that SUNY could adopt speech-restrictive regulations that "employ[ ] not necessarily the least restrictive means but ... a means narrowly tailored to achieve the desired objective." *Board of Trustees of the State Univ. v. Fox,* 492 U.S. 469, 480, 109 S.Ct. 3028, 3034–35, 106 L.Ed.2d 388 (1989) (*"Fox IV"*); *see also Fox II,* 841 F.2d at 1215 (Mahoney, J., dissenting). Also noting that the Resolution allegedly infringed upon some noncommercial speech, thereby posing a question of overbreadth, *see Fox IV,* 492 U.S. at 481–84, 109 S.Ct. at 3035–37, the Supreme Court reversed the judgment of this court and remanded for a "determination ... of the validity of [the Resolution's] application to the commercial and noncommercial speech [at issue]; and, if its application to speech in either such category is found to be valid, for determination whether its substantial overbreadth nonetheless makes it unenforceable." *Id.* at 486, 109 S.Ct. at 3038. This court then issued a mandate remanding the case to the district court, consistent with the directive of the Supreme Court. *See Fox V,* 764 F.Supp. at 751.

By this time, the remaining Plaintiffs were no longer students in the SUNY system. *See id.* Upon remand, the district court thoroughly examined the issue of mootness, and, as previously recited, concluded in *Fox V* that the case was moot because the remaining Plaintiffs were no longer SUNY students and had no "legally cognizable interest in the outcome" of the case. *Id.* at 751, 758–59. The court also concluded, however, that "grant[ing] plaintiffs leave to amend their complaint will cause no prejudice to the defendants and will advance this matter to a resolution on its merits." *Id.* at 759. Accordingly, the court granted Plaintiffs leave to amend the Complaint to include current

SUNY students as plaintiffs, and declined to dismiss the Complaint. *Id.*

Defendants then moved for modification of this order, seeking a dismissal of the Complaint due to mootness, rather than allowing an amendment of the Complaint to cure the defect. *Fox VI,* 148 F.R.D. at 476. Further, although the Plaintiffs had not formally moved for reconsideration of the mootness determination in *Fox V,* in the interest of completeness the court considered arguments advanced by Plaintiffs for reconsideration of the court's conclusion that the case was moot. *See Fox VI,* 148 F.R.D. at 477 n. 6. The court reaffirmed its finding that the case was moot, but granted Defendants' motion for reconsideration, ordering that "that portion of [*Fox V*] which permitted plaintiffs to amend their complaint pursuant to Rule 15(a) [to avoid a dismissal for mootness] be deleted," 148 F.R.D. at 489, and dismissed the Complaint. *Id.* On May 19, 1993, Plaintiffs sought reconsideration of *Fox VI* in the district court, and the court denied that motion on June 23, 1993.

This appeal followed.

### Discussion

Plaintiffs argue primarily that: (1) the Defendants waived their right to assert a defense based on mootness; (2) the Complaint should be read to include a claim for nominal damages; (3) the case is not moot because Plaintiffs sued in a representational capacity; (4) the case falls within the "capable of repetition, yet evading review" exception to mootness; and (5) the court should have permitted the amendment of the complaint to add additional plaintiffs. We consider these arguments in turn.

#### A. *Waiver and Mootness.*

■ Plaintiffs' "waiver" argument ignores the jurisdictional nature of the Article III requirement that federal courts adjudicate only "Cases" and "Controversies." *See DeFunis v. Odegaard,* 416 U.S. 312, 316, 94 S.Ct. 1704, 1705–06, 40 L.Ed.2d 164 (1974) (per curiam) ("The inability of the federal judiciary 'to review moot cases derives from the requirement of Art. III of the Constitution under which the exercise of judicial pow-

er depends upon the existence of a case or controversy.'" (quoting *Liner v. Jafco, Inc.*, 375 U.S. 301, 306 n. 3, 84 S.Ct. 391, 394 n. 3, 11 L.Ed.2d 347 (1964))).[2]

■ When a case becomes moot, the federal courts "lack[ ] subject matter jurisdiction over the action." *New York City Employees' Retirement Sys. v. Dole Food Co.*, 969 F.2d 1430, 1433 (2d Cir.1992). Defects in subject matter jurisdiction cannot be waived and may be raised at any time during the proceedings. *See Alston v. Coughlin*, 109 F.R.D. 609, 612 (S.D.N.Y.1986) ("The mootness doctrine is an elemental limitation on federal judicial power, and its effect may not be waived by a party."); *see also* Fed. R.Civ.P. 12(h)(3).

■ A case is moot, and accordingly the federal courts have no jurisdiction over the litigation, when "'the parties lack a legally cognizable interest in the outcome.'" *County of Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979) (quoting *Powell v. McCormack*, 395 U.S. 486, 496, 89 S.Ct. 1944, 1950-51, 23 L.Ed.2d 491 (1969)); *see also North Carolina v. Rice*, 404 U.S. 244, 246, 92 S.Ct. 402, 404, 30 L.Ed.2d 413 (1971) (per curiam) ("federal courts are without power to decide questions that cannot affect the rights of litigants in the case before them"); *Bragger v. Trinity Capital Enter. Corp.*, 30 F.3d 14, 16 (2d Cir.1994) (same). The required legally cognizable interest has alternatively been described as a requirement that a plaintiff have a "personal stake" in the litigation. *See United States*

*Parole Comm'n v. Geraghty*, 445 U.S. 388, 396, 100 S.Ct. 1202, 1208, 63 L.Ed.2d 479 (1980); *see also Franks v. Bowman Transp. Co.*, 424 U.S. 747, 755, 96 S.Ct. 1251, 1259-60, 47 L.Ed.2d 444 (1976); *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962).

"[T]he mootness doctrine ensures that the litigant's interest in the outcome continues to exist throughout the life of the lawsuit, including the pendency of the appeal." *Cook v. Colgate Univ.*, 992 F.2d 17, 19 (2d Cir.1993) (citations omitted) (equitable claims against university mooted by graduation of plaintiffs). This court has consistently held that students' declaratory and injunctive claims against the universities that they attend are mooted by the graduation of the students, because after their graduation and absent a claim for damages, "'it becomes impossible for the courts, through the exercise of their remedial powers, to do anything to redress the injury.'" *Cook*, 992 F.2d at 19 (quoting *Alexander v. Yale Univ.*, 631 F.2d 178, 183 (2d Cir.1980)). The relief sought in the Complaint could provide no legally cognizable benefits to Plaintiffs once they had left the SUNY system. *See Cook*, 992 F.2d at 19.[3] Accordingly, the district court applied well settled law and concluded that this case was moot. Further, the condition of mootness is not a defense that could be waived by the Defendants, but rather is a condition that deprives the court of subject matter jurisdiction.

---

**2.** Plaintiffs point to a statement in a concurring opinion by Chief Justice Rehnquist in *Honig v. Doe*, 484 U.S. 305, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988), that "while an unwillingness to decide moot cases may be connected to the case or controversy requirement of Art. III, it is an attenuated connection that may be overridden when there are strong reasons to override it." *Id.* at 331, 108 S.Ct. at 608 (Rehnquist, C.J., concurring). They also invoke an observation in *Heldman v. Sobol*, 962 F.2d 148, 154 n. 7 (2d Cir. 1992), that the mootness doctrine may be premised upon prudential, rather than constitutional, considerations. *See also United States v. IBT*, 955 F.2d 171, 174 (2d Cir.1992) (recognizing "flexible" nature of mootness doctrine).

In our view, both the *Honig* majority opinion, 484 U.S. at 317-18, 108 S.Ct. at 601, and the subsequent, unanimous ruling of the Court in *Lewis v. Continental Bank Corp.*, 494 U.S. 472,

477-78, 110 S.Ct. 1249, 1253-54, 108 L.Ed.2d 400 (1990), make it quite clear that the mootness doctrine is based upon the case or controversy requirement of Article III of the Constitution. We are fortified in this conclusion by the Court's recent, unanimous declaration that "no statute could authorize a federal court to decide the merits of a legal question not posed in an Article III case or controversy. For that purpose, a case must exist at all stages of appellate review." *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership*, — U.S. —, —, 115 S.Ct. 386, 389, 130 L.Ed.2d 233 (1994) (citations omitted).

**3.** We address in section D of this Discussion Plaintiffs' claim that possible future attendance at a SUNY unit by one or more Plaintiffs precludes a determination of mootness.

### B. *Nominal Damages as Precluding Mootness.*

■ The inability of the courts to provide relief to Plaintiffs after they left the SUNY system is logically dependent upon the absence of a claim for damages, because relief in the form of damages for a past violation of their constitutional rights is, not adversely affected by that departure. *See University of Tex. v. Camenisch,* 451 U.S. 390, 393–94, 101 S.Ct. 1830, 1832–33, 68 L.Ed.2d 175 (1981); *Cook,* 992 F.2d at 19; *Stokes v. Village of Wurtsboro,* 818 F.2d 4, 6 (2d Cir.1987) (collecting authorities). It is clear that nominal damages are available in actions alleging violations of constitutionally protected rights. *See, e.g., Carey v. Piphus,* 435 U.S. 247, 266–67, 98 S.Ct. 1042, 1053–54, 55 L.Ed.2d 252 (1978). Plaintiffs argue that because they are seeking to recover nominal damages, this case is not moot.

■ This contention fails primarily because "there is absolutely no specific mention in [the Complaint] of nominal damages. Nor can a request for such damages be inferred from the language of [the Complaint]." *Fox V,* 764 F.Supp. at 756. Plaintiffs advance three arguments in support of their claim that they should nonetheless be entitled to pursue nominal damages and thereby stave off a dismissal for mootness: (1) the prayer in the Complaint for "such other relief as the Court deems just and proper" (in addition to declaratory relief and attorney fees [4]) provides a basis for an award of nominal damages; (2) Fed.R.Civ.P. 54(c), which provides that "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings," also provides a basis to award nominal damages; and (3) in any event, they should be permitted to amend the complaint to seek nominal damages.

The primary case relied upon by Plaintiffs is *Sapp v. Renfroe,* 511 F.2d 172 (5th Cir. 1975). In *Sapp,* the plaintiff sued a high school, seeking declaratory and injunctive relief against the school for assertedly denying him admission in violation of his constitution-

al rights. Although the plaintiff had graduated from another high school by the conclusion of the trial, the court concluded that the actual damages. proved by the plaintiff (i.e., the tuition paid to the other high school) saved the case from being moot even though the complaint did not request damages relief. *See id.* at 175–76.

· The actual disposition in *Sapp,* however, was as follows: "Since we find Sapp's demand for compensatory damages, the only demand which has not been rendered moot by his graduation, to be barred by the qualified immunity of [the defendants], we affirm the judgment of the district court [dismissing Sapp's complaint]." *Id.* at 175. Defendants in this case contend that if a damages claim had been asserted in the Complaint, they would successfully have defended against that claim in their official capacities by asserting an Eleventh Amendment defense, *see Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989), and in their individual capacities by asserting a qualified immunity defense. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

These arguments are persuasive. *Will* would indeed bar a § 1983 claim for damages against Defendants in their official capacities, because "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will,* 491 U.S. at 71, 109 S.Ct. at 2312. As to qualified immunity, in view of the tortured history of this case, it can hardly be maintained that the rights which Plaintiffs seek to vindicate in this litigation were "clearly established," *see Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738, when they commenced this suit in December 1982, Plaintiffs' protestations to the contrary notwithstanding. It thus seems apparent that defenses available to Defendants would have precluded any successful claim for money damages, nominal or otherwise, in this case.

We are especially reluctant in these circumstances to read a damages claim into the Complaint's boilerplate prayer for "such other relief as the Court deems just and prop-

---

4. Plaintiffs do not contend on appeal that their claim to attorney fees precludes a determination

of mootness. Any such claim would be barred by *Lewis,* 494 U.S. at 480, 110 S.Ct. at 1255.

er," or to conclude that the district court should have exercised its discretion to permit an amendment of the Complaint to seek nominal damages. As to Fed.R.Civ.P. 54(c), there is no "final judgment" for Plaintiffs in this case upon which the rule may operate. As Plaintiffs point out, there was such a final judgment in *Fox III* on remand from our decision in *Fox II*, but that judgment was stayed and is effectively inoperative in view of the Supreme Court's decision in *Fox IV*.

Plaintiffs invoke our ruling in *Beyah v. Coughlin*, 789 F.2d 986, 989 (2d Cir.1986), that a claim for nominal damages can suffice to avoid mootness when claims for injunctive and declaratory relief have become moot. The complaint in *Beyah*, however, explicitly sought compensatory and punitive damages. *See id.* at 987; *see also Fox VI*, 148 F.R.D. at 479. Especially in the circumstances presented here, we perceive no basis to allow a belated claim for damages "to breathe life into a moribund dispute." *McCabe v. Nassau County Medical Ctr.*, 453 F.2d 698, 702 (2d Cir.1971); *see also R.S. & V. Co. v. Atlas Van Lines*, 917 F.2d 348, 351 (7th Cir.1990) (failure to seek actual or nominal damages rendered contract claim moot); *Goichman v. City of Aspen*, 590 F.Supp. 1170, 1173–74 (D.Col.1984) (plaintiff's individual claims deemed moot when he was entitled only to nominal damages and "no prayer appears in the Complaint for such nominal damages"), *aff'd on other grounds and remanded*, 859 F.2d 1466 (10th Cir.1988).

### C. *Representational Capacity.*

■ Plaintiffs also assert that the case is not moot because they were litigating in a representational capacity. As the district court noted, however, Plaintiffs "obviously have not made any attempt to have a class certified under Fed.Rule Civ.Proc. 23." *Fox V*, 764 F.Supp. at 754. As we recently stated, "in general, if the claims of the named plaintiffs become moot prior to class certification, the entire action becomes moot." *Comer v. Cisneros*, 37 F.3d 775, 798 (2d Cir.1994) (citing *Board of Sch. Comm'rs v. Jacobs*, 420 U.S. 128, 129–30, 95 S.Ct. 848, 849–50, 43 L.Ed.2d 74 (1975) (per curiam));

*see also Ahmed v. University of Toledo*, 822 F.2d 26, 27 (6th Cir.1987).

Plaintiffs point out that in *Trachtman v. Anker*, 563 F.2d 512, 514 n. 1 (2d Cir.1977), *cert. denied*, 435 U.S. 925, 98 S.Ct. 1491, 55 L.Ed.2d 519 (1978), and *Brandon v. Board of Education*, 487 F.Supp. 1219, 1224–25 (N.D.N.Y.), *aff'd*, 635 F.2d 971 (2d Cir.1980), *cert. denied*, 454 U.S. 1123, 102 S.Ct. 970, 71 L.Ed.2d 109 (1981), both decided after *Jacobs*, high-school-student plaintiffs were found to have a continuing stake in litigation even after their graduation from high school because the court concluded that they were suing in a representational capacity, in spite of the fact that no class certification had occurred. In both *Anker* and *Brandon*, however, the pleadings explicitly asserted that the student plaintiffs were acting in a representative capacity on behalf of themselves and other students similarly situated. *See Anker*, 563 F.2d at 514 n. 1; *Brandon*, 487 F.Supp. at 1224–25.

These cases are therefore distinguishable because "the pleadings before the court here do not demonstrate that plaintiffs are bringing this action on behalf of themselves and all others similarly situated." *Fox V*, 764 F.Supp. at 754; *cf. Cook*, 992 F.2d at 20 ("Unlike *Brandon* and *Trachtman*, ... the complaint herein sought ... relief solely on behalf of the plaintiffs individually, not as representatives...."). In *Brandon*, furthermore, some of the student-plaintiffs had not yet graduated, *see* 487 F.Supp. at 1224, and a viable damages claim remained in the case. *See id.* at 1225.

### D. *"Capable of Repetition, Yet Evading Review" Exception to Mootness.*

■ Plaintiffs argue that this case falls within the "capable of repetition, yet evading review" exception to mootness. In cases such as this, in which, as we have just explained, plaintiffs have sued in an individual rather than a representational capacity, this exception to mootness applies only if: "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the *same complaining party* would be subjected to the same

action again." *Murphy v. Hunt*, 455 U.S. 478, 482, 102 S.Ct. 1181, 1183, 71 L.Ed.2d 353 (1982) (per curiam) (emphasis added); *see also Lewis*, 494 U.S. at 481, 110 S.Ct. at 1256; *Weinstein v. Bradford*, 423 U.S. 147, 149, 96 S.Ct. 347, 349, 46 L.Ed.2d 350 (1975) (per curiam).

Addressing the first prong of this test, there is no reason to believe that the issue presented by this case could not be litigated in the four-year span of a standard undergraduate education. The present litigation has taken considerably longer because, *inter alia*, this court reversed the district court's articulation of the governing rule of law, and the Supreme Court in turn reversed this court on that issue. Now that the Supreme Court has defined the applicable rule, however, there is no reason to anticipate a similarly lengthy course of litigation if the issue were presented in a fresh lawsuit. In any event, the available mechanism of a class action would preclude a dismissal for mootness.

As to the second prong of the *Murphy* test, we have described the requisite likelihood of repetition as a "demonstrated probability" or a "reasonable expectation." *Deeper Life Christian Fellowship, Inc. v. Sobol*, 948 F.2d 79, 82 (2d Cir.1991); *see also McFarlin v. Newport Special Sch. Dist.*, 980 F.2d 1208, 1211 (8th Cir.1992) ("A mere 'physical or theoretical possibility' is insufficient; a '"demonstrated probability"' must be shown." (quoting *Murphy*, 455 U.S. at 482, 102 S.Ct. at 1183 (quoting *Weinstein*, 423 U.S. at 149, 96 S.Ct. at 349))).

Plaintiffs argue that one of their number could return to the SUNY system as a graduate student, and thus be subjected to the Resolution in the future. In support of this contention, Plaintiffs seek to supplement the record on appeal by proffering affidavits indicating that one of the Plaintiffs left the SUNY system lacking two credits for gradu-

ation and intends to complete his studies at SUNY, and that there is "a very real possibility and a reasonable expectation" that four other Plaintiffs who graduated may take some additional courses at SUNY "within the next few years."

The motion to supplement the record was granted by the author of this opinion prior to oral argument, subject to reconsideration by the panel, as a matter of administrative convenience. However, this evidence is not a proper supplement to the record as contemplated by Fed.R.App.P. 10(e). *See Deeper Life*, 948 F.2d at 82 (questioning whether court should consider affidavit not before district court but submitted on appeal to demonstrate case not moot); *cf. Lewis*, 494 U.S. at 480, 110 S.Ct. at 1255 (Court "not disposed to accept such an affidavit as dispositive, without providing [adversary] the opportunity of rebuttal"). Plaintiffs were certainly on notice that the justiciability of the case was at issue when the district court issued *Fox V* in May 1991. Accordingly, there was ample opportunity to present any appropriate affidavits to the district court in the two years that ensued between *Fox V* and *Fox VI*.

In any event, consideration of the affidavits would not affect the outcome of this case. They merely show that several of the Plaintiffs have expressed an intention to return to the SUNY system.[5] There is no indication that any of the Plaintiffs have even applied to the SUNY system, much less been accepted. The bare statement of intention is insufficient to escape mootness. *Cf. Deeper Life*, 948 F.2d at 82 (no exception to mootness based upon affidavit expressing intent to engage in conduct that would resuscitate litigated issue when, despite affidavit and previous similar predictions, such conduct had not occurred). In this case, moreover, the ex-

---

**5.** In a postargument submission pursuant to Fed. R.App.P. 28(j), Plaintiffs called to our attention *Washegesic v. Bloomingdale Public Schools*, 33 F.3d 679 (6th Cir.1994), in which a student at a high school sued to have a religious picture removed from the school on First Amendment grounds, and graduated from the school after achieving a favorable district court decision that the defendants appealed to the Sixth Circuit Court of Appeals. The Sixth Circuit ruled that

the appeal was not moot because the prominently placed painting impacted upon visitors to the school as well as students, and the plaintiff continued to visit the school on a regular basis. *See* 33 F.3d at 681. Assuming that this case is correctly decided, it is distinguishable. The Complaint asserts the rights of students, not visitors, to host and attend sales demonstrations in dormitories on SUNY campuses.

pressed intention to return to the SUNY system is not solely within Plaintiffs' power to accomplish; they would also have to be accepted by a school in the SUNY system.

E. *Further Amendment of Plaintiffs' Complaint.*

█ Plaintiffs also sought to avoid dismissal by amending their complaint to add additional student plaintiffs who were still attending SUNY institutions. We affirm substantially for the reasons stated in the thorough analysis of the district court in its opinion granting defendants' motion for modification. *See Fox VI,* 148 F.R.D. at 482–89. The district court correctly concluded that once a case is moot, it is no longer justiciable in federal court and must be dismissed. *See id.* at 483. Accordingly, the district court did not abuse its discretion in denying Plaintiffs permission to amend their complaint after the case had become moot.

### Conclusion

The judgment of the district court is affirmed.